RICHARD EAYRE *v.* JOSHUA S. EARL, Esq., late Sheriff, &c.·

1. The act entitled " An act to abolish imprisonment for debt in certain cases," passed December 11th, 1823, does not authorize a Sheriff to take the bond mentioned in the first section of the act, and to discharge a defendant *after* he has been confined in gaol upon an execution. Such bond and such discharge are admissible only after an *arrest* and *prior* to a confinement in gaol.

2. This statute introduces a new principle in abrogation of the common law and must be strictly complied with.

3. Although the bond is delivered to the plaintiff and by him received,· yet the default of the Sheriff in discharging the defendant is not thereby cured; but he is still liable for a voluntary escape.

The opinion of the court was delivered by

EWING, C. J.—This is an action brought against the' sheriff of the county of Burlington, for the escape of one Aaron Bozorth, who was confined in the common gaol of that county, on the 14th of July, 1823, by virtue of an execution issued by a Justice of the Peace in the court for the trial of small causes, on a judgment in favor of the plaintiff, in a plea of debt, for $99.95 of debt, and $4.20 of costs, and delivered to, and executed by one of the constables. Bozorth was discharged from confinement on the 9th of August following, by the said sheriff, upon taking a bond in the

penalty of $199.90, with the condition mentioned in the first section of the act,* passed on the 11th December, 1823, entitled "An act to abolish imprisonment for debt in certain cases." The cause comes before us on a state of the case agreed upon by the parties, and the legality of the discharge made by the sheriff on that bond is the question presented for our determination.

The act in question did not, under the circumstances of this case, authorize the sheriff to take the bond and make the discharge. Such bond and such discharge were admissible only after an arrest and prior to a confinement in gaol; and never when the defendant was in actual confinement in the gaol. This position is fully sustained by the language or phraseology of the act and by the nature of the provisions which it makes, or the acts which it directs to be performed.

1. The phraseology distinctly shews the period to which the taking of the bond is limited; "any person who may be *arrested* by any sheriff, constable or other officer, in any civil action, mesne process or process of execution," "shall be discharged from arrest by such officer, *Provided*, &c." These terms plainly indicate a period prior to the confinement in gaol. Had the Legislature intended to include the latter as well as the former, the general and usual words "in custody," would have been appropriate. It is true these

---

* NOTE.—The first section of the act is as follows:—Be it enacted, &c., That any person or persons, who may be arrested by any sheriff, constable or other officer in any civil action, mesne process or process of execution, and who intends or intend to apply to the Judges of the Court of Common Pleas of the county in which such process is served, for the benefit of the act made for the relief of insolvent debtors, shall be discharged from arrest by such officer: *Provided*, such person or persons so in custody shall give bond to the plaintiff or plaintiffs, at whose suit he or they are arrested, with sufficient surety or sureties, being a freeholder or freeholders and resident in the county, in double the sum for which he or they is or are arrested or taken in execution, with a condition that he or they will appear at the next Court of Common Pleas to be holden in the county, and petition the said court for the benefit of said act, and will in all things, proceed on said petition and application as is required and directed in cases of persons actually in gaol at the time of application, and as is required by the said acts: and that he or they will appear in person at every subsequent court or time and place to which his or their application may be adjourned, until he or they shall be duly discharged under the said acts; and if refused a discharge, surrender himself or themselves immediately thereafter, to the sheriff or keeper of the gaol of said county, there to remain until discharged by due course of law; and in case of a forfeiture of said bond, by breach of any condition therein, the said plaintiff or plaintiffs, his or their executors or administrators, may bring an action thereon, and recover the debt, damage and costs due from said debtor or debtors, and for which the arrest was made as aforesaid.

words are found in the proviso; but as there employed and qualified, they strengthen and support the construction I have adopted; " so in custody," that is to say, in custody on the arrest, not in custody in general.

Again—In the preamble the *confinement* and the *arrest* are clearly distinguished and set in the strong light of contrast and opposition. " Whereas the *confinement* of debtors in goal who are *arrested* and intend to petition for the benefit of the insolvent laws of this state," &c.

Again—In the last section it is enacted that any conveyance, &c. made, &c. after the *said arrest* shall be void and of no effect. Now if *arrest* be used in this act in a sense equivalent to *confinement in gaol*, the latter may be substituted for the former; but if so done, the section becomes a palpable absurdity.

2. The provisions of the statute, or in other words the acts directed to be done, belong all and exclusively to the period I have mentioned.

1. The sheriff, constable or other officer who has arrested the defendant is to take the bond. The sheriff, or his deputy the gaoler, is not directed or authorized to take a bond where the arrest has been made by a constable or other officer. Clearly then this act, if done at all, is to be done while the officer has the defendant in custody under such arrest.

2. The defendant is to be discharged from arrest, "*by such officer*,"—by the officer who arrested him. But it would be a most inadmissible supposition, that the Legislature intended to require the constable of a township of Washington to repair to the gaol at Mount Holly, to discharge a prisoner. Nay, when arrived there and having received the bond, the constable could not discharge him. All power and control over him ceased when he was committed to prison. He is in the custody of another. The extended construction of the act would lead to this dilemma. The sheriff or goaler cannot take the bond, for the arrest has

been made not by him but by the constable:—the constable cannot discharge, for he cannot even enter the prison but by consent of the gaoler.

3. The sheriff, constable or other officer who has on mesne process discharged the defendant on giving bond, shall so return on the process to the court or justice issuing the same. A discharge prior to the return, and not at any time during the confinement is here clearly contemplated. Again, in case of discharge on process of execution against the body, the officer shall so return. Now the making of such return by a constable a month perhaps after he has delivered the defendant to the gaoler, is not only an incongruity, but, if he has done his duty, wholly impracticable. Having conveyed the defendant to gaol, he is to take the gaoler's receipt on the execution and return it to the justice who is to make a record thereof in his docket; *Rev. Laws* 637, *sec.* 28. Again—The effect of such return is declared by the act, to excuse the officer making the arrest, discharge and return, from liability for escape, and has its appropriate application during the period I have mentioned. But the idea of exonerating a constable from liability for the escape of a defendant towards whom he had completely fulfilled his duty by a delivery to the goaler, and by actual confinement, could not have entered the minds of an intelligent Legislature. It may be said, the design was in such case to exonerate the sheriff or gaoler. Not so. There is no provision to exonerate him. It is the officer who has made the arrest. The language is explicit and unambiguous.

*Secondly*—The bond taken in this case, even if authorized by the statute, does not conform to its requisition. It should have been taken "in double the sum for which" the defendant was "arrested or taken in execution." In the present case, Bozorth was taken in execution for the costs as well as the debt, yet the bond is in double the latter only. It is no answer to say the statute is substantially complied with, or the penalty of the bond is large enough to cover all the

plaintiff can legally recover. This statute introduces a new principle, in abrogation of the common law, and in the statute itself, and by a strict compliance with its enactments, the officer must find his protection. The case bears no analogy to a bail-bond. There the plaintiff may accept the bond or proceed against the sheriff at his election. Here nothing but the bond and the vexation of a litigation upon it, in case of difficulty, is afforded him.

*Third*—The state of the case exhibits no fact ratifying on the part of the plaintiff, the act of the sheriff, and absolving him from liability. The only fact in this regard is, that the bond was "delivered to, and received by" the plaintiff. But this alone could have no sanatory influence over the error of the sheriff. The discharge was first made, and without the participation of the plaintiff, and the delivery and receipt may have been without his knowledge of its contents.

The bond was taken and the defendant discharged without authority from the statute in question; it does not conform to the statute; and no act on the part of the plaintiff is shewn ratifying the discharge. The sheriff has therefore suffered a voluntary escape; and, in my opinion, according to the stipulation in the state of the case, judgment should be entered for the plaintiff.